UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WAYNE LAND, JR. ,

    Plaintiff,

v.                                                             Case No:    2:18-cv-792-FtM-NPM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

**OPINION AND ORDER**

Plaintiff Wayne Sigmund Land Jr. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability benefits and supplemental security income benefits prior to September 23, 2016.[1] The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 25). For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 405(g) of the codified Social Security Act, 42 U.S.C. § 301 *et seq.*

**I.    Social Security Act Eligibility and the ALJ Decision**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of

---

[1] The ALJ found Plaintiff disabled on September 23, 2016 and continued to be disabled through the date of the decision. (Tr. at 27).

not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

B. Procedural History

On November 5, 2015, Plaintiff filed applications for a period of disability and disability insurance benefits and supplemental security income benefits. (Tr. at 12, 130). Plaintiff asserted an onset date of March 14, 2014. (*Id.* at 12). Plaintiff's applications were denied initially on February 29, 2016, and on reconsideration on June 20, 2016. (*Id.* at 12, 102, 130, 131). On April 13, 2017, Administrative Law Judge Sara Alston held a hearing, but became unavailable prior to rendering a decision. (*Id.* at 12, 66-75) Administrative Law Judge Laureen Penn ("ALJ") held a second hearing on December 14, 2017. (*Id.* at 12, 35-65). The ALJ issued a decision on February 5, 2018. (*Id.* at 12-27). The ALJ found Plaintiff not to be under a disability before September 23, 2016, but did become disabled on that date and has continued to be disabled through the date of the decision. (*Id.* at 26).

On October 10, 2018, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6). Plaintiff then filed a Complaint (Doc. 1) with this Court on December 3, 2018, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See Doc. 19).

## C. Summary of the ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five-step process determines whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof and persuasion through step four and then the burden of proof shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

Here, the ALJ found Plaintiff met the insured status requirements through December 31, 2019. (Tr. at 14). At step one of the evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 14, 2014. (*Id.* at 14). At step two, the ALJ determined that since the alleged onset date of March 14, 2014, Plaintiff had the following severe impairments: "scrotal cellulitis, recurrent scrotal hematoma, epididymitis, status-post renal and pancreas transplant, chronic kidney disease, anemia, hyperparathyroidism, diabetes mellitus type 1 (20 CFR 404.1520(c) and 416.920(c)). Beginning September 23, 2016, the claimant had an additional severe impairment: bilateral femoral head avascular necrosis." (*Id.* at 15). At step three, the ALJ determined that since the alleged onset date of March 14, 2014, Plaintiff did not have an impairment or combination of impairments that met or medically

equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* at 17).

At step four, the ALJ determined the following as to Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that prior to September 23, 2016, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he can stand and walk for two hours. He can sit for six hours. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds. He needs to avoid concentrated exposure to vibration and hazards. He needs a cane to ambulate. He needs one unscheduled break of 15 minutes a day, in addition to lunch and breaks. He needs to elevate his legs on a stool at 90 degrees.

(Tr. at 17-18).

The ALJ further found:

> After careful consideration of the entire record, the undersigned finds that beginning on September 23, 2016, the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except he can stand and walk for two hours. He can sit for six hours. He can occasionally stoop, crouch, kneel, and crawl. He can occasionally climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds. He needs to avoid concentrated exposure to vibration and hazards. He needs a cane to ambulate. He needs one unscheduled break of 15 minutes a day, in addition to lunch and breaks. He needs to elevate his legs on a stool at 90 degrees. He would miss two days per month.

(*Id.* at 22).

The ALJ determined that Plaintiff is unable to perform his past relevant work as a line cook and sous chef. (*Id.* at 24). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), and found that prior to September 23, 2016, there were jobs that exist in significant numbers in the national economy that

Plaintiff could have performed. (*Id.* at 24). The ALJ noted that the vocational expert identified the following representational occupations that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform: (1) telephone information clerk, DOT # 237.367-046; (2) address clerk, DOT # 209.587-010; (3) tube operator, DOT # 239.687-014; and (4) order clerk, DOT # 209.567-014. (*Id.* at 25).[2] The ALJ also found that considering Plaintiff's age, education, work experience, and RFC, beginning on September 23, 2016, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 26). The ALJ concluded that Plaintiff was not disabled prior to September 23, 2016, but became disabled on that date and has continued to be disabled through the date of the decision. (*Id.* at 26).

## II. Analysis

### A. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

On appeal, Plaintiff raises the following issue, as stated by the parties: whether the ALJ's decision was in error in failing to comply with Social Security Ruling 83-20 and by finding Plaintiff's avascular necrosis condition was not severe prior to September 23, 2016. (Doc. 25 at 11).

**B.  Whether the ALJ's decision was in error in failing to comply with Social Security Ruling 83-20 and by finding Plaintiff's avascular necrosis condition was not severe prior to September 23, 2016**

Plaintiff asserts he was hospitalized on September 23, 2016 with a diagnosis of bilateral acute avascular necrosis of the femoral neck. (Doc. 25 at 12 (citing Tr. at 647)). Plaintiff contends, "it was noted that for several years he had bilateral aseptic necrosis of his femoral heads and he presented to the hospital with severe difficulty standing, sitting, or walking for greater than 3-4 steps at a time and was in severe debilitating pain." (*Id.* (citing Tr. at 647)). Plaintiff claims that in the hospital report, it was noted that Plaintiff suffered from chronic hip pain for many years. (*Id.* (citing Tr. at 659)). Plaintiff also argues there is objective radiological evidence that he suffered from avascular necrosis of the hips since at least April 2016. (*Id.* (citing Tr. at 487)). Plaintiff then argues that

despite the overwhelming evidence that he suffered from bilateral avascular necrosis of the hips and it existed and met the threshold of severity prior to his hospital visit of September 23, 2016, the ALJ erred in finding his impairment only became severe as of September 23, 2016. (*Id.* at 12-13). In sum, Plaintiff posits: "[c]learly the claimant did not go from having a non-severe impairment of the hips to a disabling impairment of the hips overnight." (*Id.* at 14).

The Commissioner contends Plaintiff's arguments that the ALJ erred: (1) in finding September 23, 2016 the onset date of disability; and (2) in failing to find Plaintiff's avascular necrosis as a severe impairment before September 23, 2016 are without merit. (*Id.*). The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment of avascular necrosis of the hips until September 23, 2016. (*Id.* at 17). The Commissioner also argues Plaintiff mainly sought treatment for other impairments prior to September 23, 2016, and his lack of treatment is a valid reason for not finding his impairment severe before that date. (*Id.*). Further, the Commissioner contends Plaintiff's normal clinical test results and activities prior to September 23, 2016 do not suggest Plaintiff suffered from an additional severe impairment of avascular necrosis during the disputed time period. (*Id.*). The Commissioner also argues it was not until Plaintiff presented to the hospital on September 23, 2016, and had difficulty ambulating over the prior week, was unable to bear weight, had difficulty standing, sitting, and walking for greater than 3-4 steps, and had limited range of motion, that his condition was severe. (*Id.* at 18). In addition, the Commissioner argues a diagnosis of avascular necrosis of the hips in April 2016 alone with a few instances of subjective retroactive reports to a doctor that he had this

impairment for years, is not sufficient to have prompted the ALJ to find this impairment severe prior to September 23, 2016. (*Id.*). The Commissioner concludes that Plaintiff failed to meet his burden of proving his bilateral femoral head avascular necrosis was a severe impairment on or before September 23, 2016. (*Id.* at 19).

*SSR 83-20*[3]

Plaintiff argues the ALJ failed to comply with SSR 83-20 when determining Plaintiff's onset date of disability. (Doc. 25 at 11-12). SSR 83-20 describes what an ALJ must consider when determining the onset date of disability. *Caballero v. Comm'r of Soc. Sec.*, No. 6:16-CV-1056-ORL-GJK, 2017 WL 1929708, *3 (M.D. Fla. May 10, 2017) (citation omitted). In most cases, a plaintiff's onset-date determination is critical because it may affect the period for which an individual is entitled to or eligible for benefits. *Id.* (citations omitted); SSR 83-20 at *1. For disability insurance benefits, benefits may be paid "for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received." *Caballero*, 2017 WL 1929708 at *3. For SSI benefits, there are no retroactive payments and "payments are prorated for the first month for which eligibility is established after application and after a period of ineligibility." *Id.* In the instant case, Plaintiff seeks both DIB and SSI benefits.

The onset date is the first day a plaintiff is disabled as defined in the Social Security Act and regulations. SSR 83-20 at *1. The factors to consider when determining the

---

[3] SSR 83-20 has been rescinded, effective October 2, 2018, and replaced by SSR 18-1p and 18-2p. *See* SSR 18-1p; 18-2p. In the instant case, the ALJ rendered her decision on February 5, 2018, prior to the effective date of the recession. Thus, SSR 83-20 continues to apply to the instant case.

onset date are: (1) the individual's allegations; (2) the work history; and (3) the medical evidence. *Id.* at *1-*2. The individual's statements and the last date of employment are significant in determining the onset date only if they are "consistent with the severity of the condition(s) shown by the medical evidence." *Id.* Ultimately, the medical evidence should serve as the primary element in determining the onset date. *Caballero*, 2017 WL 1929708 at *3; SSR 83-20 at *2. An ALJ need not adopt a plaintiff's alleged onset date if it is not supported by the medical evidence. *Id.* (citing *Moncrief v. Astrue*, 300 F. App'x 879, 880 (11th Cir. 2008)). Plaintiff has the burden of establishing that he is disabled and the date upon which he became disabled. *Moncrief*, 300 F. App'x at 880.

If the medical evidence is either inadequate or ambiguous as to the onset date, then courts have generally required the ALJ to obtain the opinion of a medical advisor. *Caballero*, 2017 WL 1929708 at *3 (collecting cases). Conversely, if the medical evidence is sufficient to establish the onset date, then an ALJ need not consult with a medical advisor. *Id.* at *4.

Here, Plaintiff admits that he was hospitalized on September 23, 2016, with a diagnosis of bilateral acute avascular necrosis of the femoral neck. (Doc. 25 at 12 (citing Tr. at 647)). Plaintiff then relies on his own subjective reports in the hospital records that he had chronic hip pain for many years and objective medical evidence that he had avascular necrosis of the hips since at least April 2016.[4] (*Id.* (citing Tr. at 659, 487). Plaintiff argues that despite this evidence that Plaintiff's bilateral avascular necrosis of the

---

[4] From Plaintiff's cite to the transcript, it appears that the objective medical evidence was an ER CT AP (Abdomen/Pelvis) without contrast that occurred on April 23, 2015, not 2016. (Tr. at 487).

hips existed prior to his hospitalization, the ALJ found the date of his hospitalization to be the onset date. (*Id.* at 12-13).

The ALJ considered the SSR 83-20 factors in the decision. The ALJ considered Plaintiff's allegation concerning his impairments, including hip pain. (Tr. at 18). The ALJ also discussed Plaintiff's work history and how he had not worked since his alleged onset date. (*Id.* at 14-15). Finally, and most importantly, the ALJ reviewed, considered and discussed the medical evidence of record. (*Id.* at 15-22). Plaintiff points to a record from April 23, 2015, showing objective medical evidence that Plaintiff suffered from avascular necrosis in the femoral heads. (Doc. 25 at 12 (citing Tr. at 487)). That specific record indicates that there were findings of avascular necrosis in the femoral heads in April 2015. (Tr. at 487). Even if this objective CT scan amounted to a diagnosis of avascular necrosis in the femoral heads, a "diagnosis [ ] is insufficient to establish that a condition caused functional limitations." *Wood v. Astrue*, 2012 WL 834137, *5 (M.D. Fla. Feb. 14, 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)). In addition, the ALJ noted that in November 2013, Plaintiff helped a friend lift a concrete slab. (Tr. at 19). Further, the ALJ noted that in March 2015, medical reports indicated Plaintiff had a normal gait; in July 2015, Plaintiff was trimming trees; in August 2015, Plaintiff was observed having a normal gait; and in November 15, 2015, Plaintiff was hospitalized for other conditions and the medical professionals recommended that Plaintiff ambulate as much as possible. (*Id.* at 19-20).

In May 2016, Plaintiff was evaluated by Eshan M. Kibria, D.O. for a physical consultative examination. (*Id.* at 20, 640-44). Dr. Kibria found, among other things, that Plaintiff "had a normal station and gait with no assistive device needed or used. (*Id.* at

20; 641). Dr. Kibria diagnosed Plaintiff with a history of bilateral hip pain due to subchondral bone infarcts, and also found Plaintiff had limited range of motion in his hips. (*Id.*).

On September 23, 2016, Plaintiff was hospitalized for bilateral acute avascular necrosis of the femoral neck. (Tr. at 647). Plaintiff complained of having severe difficulty ambulating, being unable to bear weight, and having difficulty standing, sitting, or walking for greater than 3-4 steps at a time. (*Id.*). Further, the medical records reflect that Plaintiff was severely debilitated by hip pain. (*Id.*). Even though Plaintiff reported that he had this condition for several years, the medical records from the time period before this hospitalization show Plaintiff able to ambulate with a normal gait and even encouraged to ambulate. (*Id.* at 19-20). The Court finds that the ALJ provided a detailed analysis of the medical evidence during the alleged duration of disability. For the foregoing reasons and because the ALJ considered the relevant medical evidence of record and this evidence supports the ALJ's finding that the onset date of disability is September 23, 2016, the Court finds that the ALJ's decision was based upon substantial evidence.

*Severe Impairment at Step Two*

Plaintiff argues the ALJ erred in finding Plaintiff's bilateral femoral head avascular necrosis became a severe impairment on September 23, 2016, and should have found it a severe impairment at step two of the sequential evaluation since the alleged onset date. (Doc. 25 at 12-13). The Commissioner argues Plaintiff failed to meet his burden of showing that his bilateral femoral head avascular necrosis was a severe impairment on or before September 23, 2016. (*Id.* at 19).

A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Furthermore, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

Here, the ALJ found that Plaintiff suffered from the following severe impairments: since the alleged onset date of disability, March 14, 2014, Plaintiff had the following severe impairments: "scrotal cellulitis, recurrent scrotal hematoma, epididymitis, status-post renal and pancreas transplant, chronic kidney disease, anemia, hyperparathyroidism, diabetes mellitus type 1 (20 CFR 404.1520(c) and 416.920(c)).

Beginning September 23, 2016, the claimant had an additional severe impairment: bilateral femoral head avascular necrosis." (*Id.* at 15). Thus, the ALJ found Plaintiff met the requirements at step 2 and continued with the evaluation. (*Id.*).

As long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including his bilateral femoral head avascular necrosis – any potential error is harmless. *See Griffin*, 560 F. App'x at 841-42. Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R. §§] 404.1529, 416.929, and SSR 16-3p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 [C.F.R. §§] 404.1527 and 416.927." (Tr. at 23). In addition, the ALJ thoroughly considered the medical records and all of Plaintiff's impairments, whether severe or non-severe, from the alleged onset date through the date of the decision, including those records related to Plaintiff's bilateral femoral head avascular necrosis. (Tr. at 18-22). Thus, even if the ALJ erred in failing to find Plaintiff's bilateral femoral head avascular necrosis severe from the alleged onset date to September 23, 2016, the error was harmless because the ALJ considered all of Plaintiff's impairments whether severe or non-severe in combination from the alleged onset date to the date of the decision. Accordingly, the Court finds that the ALJ's decision as to this issue is supported by substantial evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and that there was either

no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, it is hereby **ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 23, 2020.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties